



**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON GRAND JURY 2020**
**APRIL 27, 2021 SESSION**

**UNITED STATES OF AMERICA**

**v.**                                          CRIMINAL NO. _3:21-cr-00070_
                                                        18 U.S.C. § 1343
                                                        18 U.S.C. § 1957
                                                        18 U.S.C. § 2315

**ABDUL INUSAH**

# I N D I C T M E N T

The Grand Jury charges:

## Introduction

At all times relevant to the Indictment:

### Terms

1.      "Online schemes" targeted persons looking for romantic partners, friendship, and other close personal and business relationships on dating websites and other social media platforms.  The perpetrators of the schemes created profiles using fictitious and fake names, locations, images, and personas, allowing the perpetrators of the schemes to cultivate relationships with prospective victims.  The victims provided money and gifts to the perpetrators of the schemes and were typically asked to continue and conduct transactions on behalf of the perpetrators of the scheme.

2.      The term "shell company" refers to a purported business entity incorporated under state law that does not engage in any substantial legitimate business activity, but was instead used to perpetrate bank fraud, wire fraud, money laundering or other criminal offenses.

3.     Bitstav Supply LLC was a shell company associated with defendant ABDUL INUSAH.

4.     "Zelle" was a digital payment network and part of a private financial services company owned by Bank of America, BB&T now "Truist," Capital One, J.P. Morgan Chase N.A., PNC Bank, U.S. Bank and Wells Fargo.  Zelle allowed an individual to electronically transfer money from his or her bank account to another registered user's bank account, held within the United States, by using a mobile device or the website of a participating banking institution.

5.     J.P. Morgan Chase, N.A. ("Chase"), PNC Bank ("PNC") and SunTrust Bank ("SunTrust") which is now also known as "Truist," were financial institutions of the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.

6.     At all relevant times, SunTrust and PNC were financial institutions which engaged in, and the activities of which affected, interstate commerce, as defined in 31 U.S.C. § 5312(a)(2).

<u>The Scheme to Defraud</u>

7.     From at least November 8, 2018 through at least December 2019, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant ABDUL INUSAH, together with other persons both known and unknown to the Grand Jury, knowingly participated in a scheme to commit wire fraud offenses, in violation of 18 U.S.C. § 1343.

8.     The purpose of the scheme to defraud was for defendant ABDUL INUSAH and his associates to enrich themselves by falsely cultivating relationships online with the victims and thereby causing the victims to send money to persons working with the defendant and his associates and to accounts controlled by defendant and his associates.

<u>Manner and Means</u>

9.     It was part of the scheme to defraud that defendant ABDUL INUSAH and others both known and unknown to the Grand Jury, would and did:

    a.  Target and contact victims via email, text messaging, or online dating websites and social media websites that fraudulently induced victims into believing the victim was in a romantic relationship, friendship, or business relationship with a person using a false and fraudulent identity created by defendant and his associates of the scheme;

    b.  Refuse to use FaceTime or any other video-chat technology with the victims in order to conceal their true identities;

    c.  Induce the victims to send money for a variety of false and fraudulent reasons to persons using fraudulent identities, when, in actuality, the accounts were controlled by defendant;

    d.  Direct victims to send payments via wire transfer services, including but not limited to bank wire, Western Union, and MoneyGram, to themselves or other individuals.  At times, victims were directed to send payments to shell companies and accounts under defendant's control; and

    e.  Share the proceeds with his associates and others through wire transfers, Zelle, and by cashing money orders and cashier's checks.

10.     Specifically, in furtherance of the fraud, defendant ABDUL INUSAH, and others both known and unknown to the Grand Jury, carried out the scheme to defraud in the following manner:

**Grace Benson and Victim G.W.**

11.     In or around early 2019, defendant ABDUL INUSAH, together with persons both known and unknown to the Grand Jury, through an individual purporting to be Grace Benson (hereinafter reference to "Grace" shall mean the false persona created to further the fraud scheme) contacted Victim G.W. online.  Victim G.W. lived in the State of Washington.

12.     Initially, Grace and Victim G.W. communicated weekly but then began to communicate daily through Google Hangouts or telephone calls.  Grace and Victim G.W. never

communicated via Facetime because Grace falsely told Victim G.W. that Grace's phone did not have that capability.

13.     Grace falsely and fraudulently told Victim G.W. that she lived in Johannesburg, South Africa and owned a cocoa plantation.

14.     Victim G.W. falsely believed that he and Grace were involved in a virtual romance.

15.     As part of the scheme to defraud, within approximately two months of the start of their online relationship, Grace falsely and fraudulently told Victim G.W. that she needed money to make arrangements to maintain the cocoa plantation and to move to the United States to marry Victim G.W.  Grace further misrepresented to Victim G.W. that the cocoa planation would generate a great deal of money that they could use to live on after they were married.

16.     Grace told Victim G.W. that she needed him to send money to individuals or companies who would then forward the money to Grace.  Grace falsely told Victim G.W. that Bitstav Supply was a company that worked with her cocoa plantation.

17.     On or about February 19, 2019, Grace fraudulently induced Victim G.W. to send at least four wire transfers of funds for her benefit and for the sale of the cocoa plantation through Bitstav Supply.  These wires were sent to defendant ABDUL INUSAH's bank account held by PNC Bank in Ohio.

**Miarama Ousman and Victim M.C.**

18.     On or about November 8, 2018, defendant ABDUL INUSAH, together with persons both known and unknown to the Grand Jury, through an individual purporting to be Miarama Ousman (hereinafter reference to "Miarama" shall mean the false persona created to further the fraud scheme) contacted Victim M.C. online.  Victim M.C. lived in Alabama.  Miarama falsely and fraudulently told Victim M.C. that she lived with her uncle in Ghana.

19.     Miarama and Victim M.C. initially communicated weekly but soon began to communicate daily via text messaging.

20.     As part of the scheme to defraud, Miarama fraudulently induced Victim M.C. to send various individuals monies that were allegedly for Miarama's benefit.  Having become emotionally attached to Miarama, and falsely believing they shared romantic feelings for each other, Victim M.C. began to send funds to others as directed by Miarama for Miarama's benefit.

21.     Miarama fraudulently induced Victim M.C. to send $6,000 to an individual in New York by falsely claiming the money would be used for their traditional African wedding ceremony. Victim M.C. was falsely told by Miarama that the $6,000 was for Miarama's uncle to purchase cows, which Miarama falsely misrepresented was an African tradition.

22.     In furtherance of the scheme to defraud, Miarama also falsely and fraudulently told Victim M.C. that she had inherited 34 kilograms of gold but owed the Ghanaian government $24,000 in overdue taxes.  Victim M.C. sent a $24,000 cashier's check at Miarama's direction to an individual in New York who Miarama fraudulently misrepresented was supposed to forward the money to Miarama in Ghana.

23.     In furtherance of the scheme to defraud, Miarama induced Victim M.C. to send a second $24,000 cashier's check to an individual in New York by falsely and fraudulently stating that Ghanaian officials had incarcerated her for failure to pay taxes.

24.     In furtherance of the scheme to defraud, Miarama also fraudulently induced Victim M.C. to send more money by falsely misrepresenting that she had been infected with a serious virus while incarcerated and needed six medical treatments at a cost of $3,000 per treatment for a total of $18,000.

25.     In furtherance of the scheme to defraud, on or about January 4, 2019, Miarama fraudulently induced Victim M.C. to wire $13,000 to an individual in Huntington, Cabell County, West Virginia.  Miarama instructed Victim M.C. to falsely list equipment purchase as the wire's purpose.

26.     In furtherance of the scheme to defraud on or about January 24, 2019, Miarama fraudulently induced Victim M.C. to wire $21,000 to Bitstav Supply, LLC via defendant ABDUL INSUAH's PNC bank account held in Ohio. Again, Miarama instructed Victim M.C. to falsely list equipment purchase as the wire's purpose.

27.     In furtherance of the scheme to defraud, on or about January 24, 2019, Victim M.C. wired $21,000 to defendant ABDUL INUSAH's bank account held by PNC, even though he had never met or previously communicated with defendant ABDUL INUSAH.

### Judith Wimmer and Victim T.G.

28.     In early 2018, defendant ABDUL INUSAH, together with other persons both known and unknown to the Grand Jury, through an individual purporting to be Judith Wimmer (hereinafter reference to "Judith" shall mean the false persona created to further the fraud scheme) contacted Victim T.G. online. Victim T.G. lived in Ohio. Judith falsely and fraudulently told Victim T.G. that she was a Wal-Mart clerk in Ohio.

29.     Judith and Victim T.G. frequently communicated through texts and emails.

30.     Judith falsely and fraudulent told Victim T.G. that her deceased parents had bequeathed to her real estate in Myrtle Beach, South Carolina valued between $8 and $12 million.

31.     In furtherance of the scheme to defraud, Judith falsely told Victim T.G. that she was traveling to Africa on an UNICEF mission trip and needed money to return to the United States.  Later, Judith fraudulently induced Victim T.G, to send money for the return trip to her

friend in Texas who would then transfer the money to Judith.  Judith falsely claimed that she was unable to access her bank accounts in the United States.

32.     As part of the scheme to defraud, on or about September 3, 2019, Judith fraudulently induced Victim T.G. to wire her $20,000 for expenses she incurred in Africa and to pay for her return trip to the United States.  Judith instructed Victim T.G. to wire the $20,000 to defendant ABDUL INUSAH even though Victim T.G. had never previously met or communicated with defendant ABDUL INUSAH.  Judith further directed Victim T.G. to falsely tell bank officials that the purpose of the $20,000 wire was to purchase a 2014 Ford F150 truck.

**Count One**
**(Wire Fraud)**

33.     Paragraph 1 through 32 are incorporated herein.

34.     On or about September 3, 2019, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant ABDUL INUSAH and others both known and unknown to the Grand Jury, having devised and intended to devise in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, defendant ABDUL INUSAH knowingly transmitted and caused to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds when defendant ABDUL INUSAH and other persons both known and unknown to the Grand Jury, caused Victim T.G. to wire $20,000 from Victim T.G.'s bank account located in Ohio to defendant ABDUL INUSAH's bank account held by SunTrust in Huntington, Cabell County, West Virginia.

       All in violation of Title 18, United States Code, Section 1343.

## Count Two
### (Receipt of Stolen Money)

35.     Paragraphs 1 – 32 are incorporated by reference herein.

36.     From at least November 2018 through at least December 2019, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant ABDUL INUSAH received, possessed, concealed, stored, bartered, sold and disposed of goods, wares, merchandise, securities, and money of the value of $5,000 and more, which had crossed a state boundary after being stolen, unlawfully converted, and taken, to wit: defendant ABDUL INUSAH received proceeds of fraud schemes that he knew had been stolen and which were transferred from bank accounts and money transfer locations located outside of the State of West Virginia to bank accounts and addresses in Huntington, Cabell County, West Virginia, and elsewhere.

All in violation of Title 18, United States Code, Section 2315.

## NOTICE OF FORFEITURE

1.      The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

2.      Notice is hereby given of 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Section 981 and/or 2461(c):

      a.      All property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

      b.      All property involved in such violations or traceable to property involved in such violations; and

      c.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above:  a forfeiture money judgment in the amount of at least $161,125, such amount constituting the proceeds of the violations set forth in this Indictment.

LISA G. JOHNSTON
Acting United States Attorney

By:

KATHLEEN ROBESON
Assistant United States Attorney

R. GREGORY MCVEY
Assistant United States Attorney

11